SUSAN S. STONE *et al. vs.* CLARENCE H. ENGSTROM.

G. being the owner of real estate taxed at $7000 which was to be sold for taxes, requested E. to attend the sale and purchase it. E. bought the land for the sum of $49.40 and took a deed from the collector of taxes. G. intended to make a gift of the land to E. through the medium of the tax sale, and so informed E., but remained in possession until his death. The tax deed was void, but both parties supposed it to be valid. After G.'s death his devisee claimed the land.

*Held*, that the tax deed being void the intended gift to E. failed.

*Held*, further, that G.'s devisee was not estopped from asserting title to the land, since there had been nothing in G.'s conduct in regard to the purchase of the land by E., either misrepresentation or concealment, knowledge or waiver of any defect in the title, to create an estoppel *in pais*.

An equitable estoppel ought not to be enforced at law in favor of a purchaser of property where there is such a disproportion between the value of land and the price paid for it as to shock the conscience.

PLAINTIFF'S petition for a new trial.

*September* 20, 1895. STINESS, J. This case in ejectment was heard by a single justice in Kent county, who found the following facts : Moses Green died July 14, 1892, the owner in fee, so far as the records appeared, of the land in question situated in the town of Warwick. By his will, executed July 23, 1885, he gave to Susan S. Stone all his real and personal estate. On October 6, 1879, the land was sold at auction to the defendant, by the collector of taxes for the town of Warwick, for non-payment of taxes, for the sum of $49.40, and a deed was given by the collector. Green informed the defendant that the sale was to take place ; requested him to attend it and to buy the land, although the defendant offered to lend him the money to redeem the land from the tax levy. After the sale Green requested the defendant to defer recording the deed until Green's death, telling him that he wished the property to be the defendant's after his death, but wished to retain possession of it during his life. Green did retain possession and also mortgaged it as his necessities required. The court further found that it was the settled and continued intention of Green to ignore and waive any defects in the tax title, which was in fact defective, and to make the deed the vehicle of conveyance of the estate to the defendant. The

court found, as a matter of law, that the tax deed was void and vested no estate in the premises in the defendant ; but, as the defendant took his title at the solicitation of Green and at his request paid a valuable consideration therefor, Green, if living, would be estopped to deny the validity of the title, and that the plaintiff, his devisee, is equally bound by the estoppel. The court accordingly gave judgment for the defendant. The plaintiffs petition for a new trial.

Notwithstanding the settled purpose of Green to give his estate to the defendant through the tax sale, the defendant gets no title thereby, if, as was found, the whole proceeding was absolutely void. However strong Green's intention may have been, it was ineffectual, and the proceedings were inoperative to that end, if they were not such as to vest a legal title. The intended gift failed because the vehicle chosen was incapable of carrying it. So much, therefore, of the case as relates to any intended gift, for such it practically was, needs no further consideration.

The only vital question which remains is that of estoppel. The court based its decision upon an estoppel *in pais* from these facts : That Green solicited Engstrom to buy the land, intending to waive all defects, and that Engstrom paid a valuable consideration therefor. At first sight this seems to fall within the class of cases where one has stood by and allowed or induced another to buy under a defective title, which the former is estopped afterwards to set up. But a closer analysis shows that it lacks an essential element of such cases, namely, that of knowledge or constructive fraud on the part of the party estopped. In *Pickard* v. *Sears*, 6 Ad. & E. 469, where this doctrine was first declared in England, the decision was that where one by his words or conduct *wilfully* causes another to believe the existence of a state of things, and induces him to act on that belief, so as to alter his previous position, the former is concluded from averring against the latter a different state of things as existing at the same time. In the present case there were no misrepresentations on the part of Green, no knowledge or concealment of any defect in the title, and no waiver of any

such defect. On the contrary, after the sale Green said that the deed was as good as gold; that a will could be broken but the deed could not be broken. Both parties evidently regarded it as a good deed, conveying a good title. The only conduct on Green's part upon which to base an estoppel was the simple request to the defendant to buy the property for the reason that it was to be sold, and it might as well be his as anybody's. The defendant bought under this expectation. And yet, according to his own testimony, he fully understood that he was only buying a tax title, which Green had the right to redeem within a year; but if he did not redeem it, both parties honestly believed that the property would belong to the defendant under the tax deed. There is nothing in this to work an estoppel; it was simply a mistake on both sides as to the efficacy of the tax deed. They both supposed that a result had been accomplished which was not accomplished. The defendant took his chances upon the deed without any fraud, concealment, waiver or misrepresentation on the part of Green, who simply stated the right to be acquired, according to the statute under regular proceedings, with nothing to show that he had any knowledge that they were irregular or invalid.

The decision of this case by the trial court was based upon the rule that one who acquiesces in the disposition of his property by another under color of title, and pretending to title, is bound by such disposition. This rule was stated by Chancellor Kent in *Storrs* v. *Barker*, 6 Johns. Ch. 166, and followed in *Tilton* v. *Nelson*, 27 Barb. 595. In these cases the owner of the land knew the facts which created the defect in the title, and in the former case expressly disclaimed title in himself, and in the latter had made a contract under which the conveyance of the property had been made. It was an ignorance of law, and not of fact. Chancellor Kent said that every person is presumed to know his own rights, provided he has had reasonable opportunity to know them, and that nothing is more liable to abuse than to permit a person to reclaim property upon the mere pretence that he was ignorant of his title. Such an assertion is easily made and

difficult to contradict.    But there is a wide difference between knowing the facts of one's own title and knowing the essential facts of a tax assessment and levy ; between a voluntary proceeding and a sale *in invitum*, and between open acquiescence in the former and mere silence in the latter.    It is not uncommon for people to allow their property to be sold for taxes without protest, and then to attack the validity of the proceedings afterwards.    But we never heard it claimed that they were estopped from doing this by their acquiescence. This was really all that Green did.    He refused to redeem his property but said to the defendant " you might as well buy it as anybody."    He made no promise or representation at the time ;   reserved his right to redeem, and for all that appears might have attacked the validity of the sale at once. His subsequent statements that he did not mean to do it because he wanted Engstrom to have it, and that it was his, amount to nothing, because an estoppel does not arise after the fact, except in a change of situation, which has not occurred here ;  for Engstrom did not enter into possession until after Green's death, or make any expenditure upon the property beyond the purchase money.    In *Dickerson* v. *Colgrove*, 100 U. S. 578, an owner's attention was called to his right to claim title and he expressly disclaimed it, upon the faith of which improvements were made.    In *Favill* v. *Roberts*, 50 N. Y. 222, there was the same knowledge of title by heirs whose property was sold by an executor with their active approbation.    All of these cases differ from the case before us in knowledge of the facts of title, in leading the purchaser to think the title to be other than it was, in payment of full price, in a fair and voluntary sale, and in consequent expenditures.    Upon what then can an estoppel be based in this case ?    Upon nothing but the solicitation to buy at the auction sale, without more.    But, as Gray, C. J., said in *Jackson* v. *Allen*, 120 Mass. 64, p. 79, " To constitute an estoppel *in pais*, it is essential that the defendant should, by word or act, have represented the fact to be different from what he now attempts to show it to have been.    Mere disappointment in expectation, or breach of promise or covenant

relating to the future, cannot constitute an estoppel *in pais.*"
Green misrepresented nothing. He stated the case just as it
was. Both parties mistook the value of the tax deed. Such
a mistake works no estoppel. *Parker* v. *Barker,* 2 Met. 423 ;
*Proctor* v. *Putnam Machine Co.,* 137 Mass. 159 ; *Frederick*
v. *Missouri River, etc., R. R. Co.,* 82 Mo. 402 ; *Pitcher* v.
*Dove,* 99 Ind. 175 ; *Copeland* v. *Copeland,* 28 Me. 525 ; *East*
v. *Dolihite,* 72 N. C. 562.

Aside from these considerations it is a rule in equity that a
sale will not be enforced when there is such a disproportion
between the price paid and the value of the property as to
shock the conscience. *Randolph* v. *Quidnick Co.,* 135 U. S.
457. Upon the same principle an equitable estoppel ought
not to be enforced in a similar case. *Townsend Savings Bank*
v. *Todd,* 47 Conn. 190. The purchase of property taxed at
$7,000 for $49.40 is clearly of that character. It can only
be supported by the intended gift, but that having failed, it
cannot rest upon an equitable estoppel. Our conclusion is
that the devisee of Moses Green is not estopped to deny the
title of the defendant under the tax deed, and that a new
trial must be granted.

*Robert W. Burbank, Albert R. Greene & Charles F.
Butterworth,* for plaintiffs.

*Simon S. Lapham & Dexter B. Potter,* for defendant.