THE STATE OF MISSOURI, AT THE RELATION AND TO THE USE OF JAMES P. BEARDEN, RESPONDENT, v. AMERICAN SURETY COMPANY OF NEW YORK, A CORPORATION, APPELLANT.— —S. W. (2d) —.

Springfield Court of Appeals.   April 23, 1937.

L. E. Tedrick, M. H. Henson and Phillips & Phillips for respondent.

Bryan, Williams, Cave & McPheeters for appellant.

FULBRIGHT, J.—This is an action initiated in the Circuit Court of Butler County by the plaintiff on the bond of John W. Young, deceased, formerly guardian of the person and estate of the relator, James P. Bearden, who was at the time a person of unsound mind and incapable of managing his affairs, for the recovery of $2147.85, alleged to have been wrongfully and unlawfully expended by said John W. Young as said guardian.

The petition is in two counts. For the purpose of this opinion it is unnecessary to set them out at length. The answer to each of the counts is a general denial. In addition, and as an affirmative defense, defendant alleges that the items for which plaintiff seeks to recover were contained in annual settlements made by the deceased guardian and that certain other items were contained in the final settlement made by the administratrix of said deceased guardian. It also pleaded the good faith of the deceased guardian in contesting the application for a determination and finding that relator at the time had recovered his sanity. The answer to both counts are similar alleging that no objections or exceptions were made to

the settlement of the administratrix of the deceased guardian, that no appeal was taken therefrom, that the probate court approved all annual settlements and said final settlement, and that said final settlement has the force and effect of a final judgment and could not be attacked collaterally.

The cause was submitted on an agreed statement of facts which is as follows:

"1. That James P. Bearden was adjudicated incompetent by the Probate Court of Reynolds County, Missouri, on the 16th day of August, 1918.

"2. That John W. Young was appointed guardian of the person and curator of the estate of the said James P. Bearden on the 17th day of December, 1925, succeeding a former guardian and curator.

"3. That the said John W. Young executed the bond sued on in this cause, same being signed by the American Surety Company, the defendant herein, and duly approved by the Probate Court of Reynolds County, Missouri, a copy of which is hereto attached, marked 'Exhibit A' and made a part hereof.

"4. That immediately after the filing of said bond the said John W. Young entered upon the discharge of his duties as such guardian and curator and once each year thereafter filed in the office of the Probate Judge of Reynolds County, Missouri, a statement of his accounts as such guardian and curator, including all receipts of property or money and all disbursements made by him, nine in all, which were all duly approved by said Probate Court.

"5. That on the 15th day of September, 1933, proceedings were instituted in the Probate Court of Reynolds County, Missouri, by William Rhea on behalf of James P. Bearden for the purpose of determining whether Bearden had been restored to his right mind and a hearing was had before the Judge of said court on September 25, 1933, who decided adversely to Bearden. Whereupon and thereafter, Rhea requested a trial by a jury, which was had on November 14, 1933, which resulted in a verdict for Bearden. Young then appealed the cause to the Circuit Court of Reynolds County, Missouri, where the case was tried *de novo* on the 29th and 30th days of May, 1934, again resulting in a verdict for Bearden. Whereupon, Young perfected his appeal to the Springfield Court of Appeals, which said court affirmed the judgment of the trial court on the 7th day of October, 1935.

"6. That this suit is brought to recover the expenses of the above mentioned litigation incurred by Young in resisting Bearden's suit for restoration, and which were paid out of Bearden's estate by Young, itemized statements of which are hereto attached, marked 'Exhibits B and C' and made a part hereof.

"7. That the said John W. Young died on the 23rd day of July,

1935, and his widow, Rebecca Young, was, on July —, 1935, appointed administratrix of his estate and duly qualified as such.

"8. That on the 30th day of July, 1935, O. C. Lucy was appointed as successor guardian and curator of the estate of James P. Bearden, and on said date accepted the appointment and filed his bond, which was duly approved by the Court.

"9. That on the 20th day of August, 1935, the said Rebecca Young, in her capacity as administratrix of the estate of John W. Young, filed with the Probate Court of Reynolds County, Missouri, what she designated as her final settlement of the account of the said John W. Young, deceased, as guardian and curator of the estate of James P. Bearden, which was sworn to before the said O. C. Lucy and a copy thereof delivered to him on the 15th day of August, 1935, a copy of said settlement is hereto attached, marked 'Exhibit D' and made a part hereof.

"10. That Rebecca Young delivered to O. C. Lucy on the 15th day of August, 1935, copies of the settlement which she subsequently filed as and for a final settlement, and the said O. C. Lucy receipted for it as such; that on said date she also delivered to him vouchers numbered from 1 to 44, inclusive, totaling $1285.05, which she stated represented legitimate expenditures by the guardian and which O. C. Lucy receipted for as such; that she also delivered to him a statement of the Bank of Piedmont showing the said estate had on deposit in said bank the sum of $1019.72; that she delivered to O. C. Lucy also at said time two assignments of fees to the estate of James P. Bearden and her check as administratrix of the estate of John W. Young for $226.64, representing the amount of cash belonging to the estate of James P. Bearden which John W. Young had in his possession at the time that he died; that thereafter, and on the — day of August, 1935, and after O. C. Lucy had been appointed guardian and curator of the estate of James P. Bearden and after Rebecca Young had filed her said settlement, and after it had been examined and approved by the Probate Court of Reynolds County, Missouri, Rebecca Young delivered to the said O. C. Lucy, as guardian and curator of the estate of James P. Bearden, the deeds of trust and notes and the bonds listed in the said settlement of Rebecca Young, and the said O. C. Lucy, in his capacity as guardian and curator of the estate of James P. Bearden, executed and delivered to Rebecca Young his receipt for said property. A copy of the receipt for copies of the said settlement of Rebecca Young, the said vouchers, bank statement, assignments and check dated the 15th day of August, 1935, and a copy of the receipt for the deeds of trust, notes and bonds dated the — day of August, 1935, being in one instrument, is hereto attached, marked 'Exhibit E' and made a part hereof.

"11. That no notice of the time and place of the final settlement

was ever published in any newspaper, and that no notice thereof was ever delivered to James P. Bearden, or O. C. Lucy, the successor guardian and curator.

"12. That said Rebecca Young, administratrix of the estate of John W. Young, deceased, did not cause a copy of her settlement of the estate of John W. Young, deceased, together with a written notice stating the day on which and the court in which she would make such settlement, to be delivered to James P. Bearden or to O. C. Lucy as successor guardian and curator of the estate of James P. Bearden, at least four weeks next before the first day of the term of the Probate Court of Reynolds County, Missouri, at which said purported settlement was filed and approved.

"13. That in her settlement the said Rebecca Young charged the said John W. Young with all of the assets remaining in his hands after the disbursements and expenditures made by him and accounted for in his several annual settlements and which disbursements and expenditures in his several annual settlements had been duly approved by the Probate Court of Reynolds County, Missouri, and also charged the said John W. Young with all moneys and property which he had received as guardian and curator of the estate of James P. Bearden following the date of his last annual settlement.

"14. That said settlement was examined, considered and approved by the Probate Court of Reynolds County, Missouri, on the 20th day of August, 1935.

"15. That same was also approved by the Veterans Administration of Jefferson Barracks, Missouri.

"16. That there is no controversy about any of the settlements made by John W. Young except the eighth and ninth annual settlements, copies of which are hereto attached, marked 'Exhibits F and G,' respectively, and made a part hereof, and the settlement made by Rebecca Young and hereinabove referred to as Exhibit D.

"17. That when the said John W. Young appealed from the judgment of the Circuit Court he filed in said court a *supersedeas* bond.

"18. That although John W. Young died on July 23, 1935, while said appeal was pending, there was no reviver of said cause of action in said Court of Appeals against O. C. Lucy as guardian and curator, or against Rebecca Young as administratrix, or against the successors in interest of said John W. Young.

"19. That prior to and at the time of his opposing Bearden's restoration, Young had been advised by several experts in mental diseases that Bearden was insane and had not recovered his sanity and was also informed by a number of citizens who had occasion to observe Bearden, but who were not experts in mental diseases, that in their opinions the said James P. Bearden had not recovered his sanity.

"20. That Young himself was of the opinion Bearden was insane

and that he had been advised by his attorneys, Roy W. McGee, William T. Powers and C. I. Hoy, that he ought to take the appeals.

"21. That Young also heard numerous medical experts say, and later upon the first trial testify, that in their opinion Bearden was sane.

"22. That Young heard numerous of Bearden's close friends and associates say, and later heard them testify on the first trial, that in their opinion Bearden was sane.

"23. That the expenses complained of in plaintiff's petition were reasonable and necessary in making the defense, provided the defense was necessary, and made in good faith.

"24. That no objections or exceptions to the settlement of the accounts of the said John W. Young made by the administratrix of the estate were filed in the Probate Court of Reynolds County, Missouri, by the successor guardian, O. C. Lucy, or anyone else during the August, 1935, Term of said court or since that time.

"25. No appeal from the order approving the settlement of said administratrix was taken by the successor guardian or by anyone else within the time allowed by law.

"26. That the final settlement of O. C. Lucy was approved on the 3rd day of December, 1935, a copy of the order approving same being hereto attached, marked 'Exhibit H' and made a part hereof.

"27. The defendant was notified by letter dated July 6, 1934, of the alleged unlawful expenditures made by John W. Young, a copy of which is hereto attached, marked 'Exhibit I' and made a part hereof.

"28. That the Probate Court of Reynolds County, Missouri, did not authorize the expenditures of any of the items complained of in this suit prior to the time they were paid.

"29. That the estate of John W. Young, deceased, is insolvent.

"30. It is understood and agreed that the several exhibits attached to this stipulation are to be considered as parts of the stipulation the same as if they were the original instruments, and the parties hereto hereby waive any objections to them on account of their being copies instead of the original instruments."

Hereafter such of said exhibits as are necessary for the purpose of this opinion will be set out in full.

The issue to be determined is whether the settlement made by Rebecca Young, in her capacity as administratrix of the estate of John W. Young, designated as her final settlement of the account of the said John W. Young, deceased, as guardian and curator of the estate of James P. Bearden, made with and sworn to before O. C. Lucy, successor guardian, on the 15th day of August, 1935, and filed with and approved by the Probate Court August 20, 1935, has the force and effect of a final judgment.

It is contended by respondent that inasmuch as there was no notice

given by Rebecca Young, administratrix of the deceased guardian, John W. Young, of said settlement, there was in fact no final settlement, and cite Chapter 1, Article 18, Revised Statutes 1929, sections 448 to 507 inclusive, and several other sections of the statutes, as well as the case of State ex rel. Knisely v. Holtcamp, 181 S. W. 1007, in support of this contention, all of which we have carefully examined.

We find no section in Chapter 1, Article 18, Revised Statutes Missouri 1929, pertaining to guardians and curators of insane persons requiring such notice. On the contrary, section 497 thereof directs that "Whenever any such guardian shall die, resign, or be removed from his trust, the Probate Courts shall have the same authority as they have in like cases over executors and administrators and their sureties."

Since Chapter 1, Article 18, *supra,* contains no provision requiring notice to be given by the legal representative of a deceased guardian of an insane person, and since Probate Courts are directed by Section 497 to the procedure in like cases over executors and administrators and their sureties, it follows that the legal representative of a deceased guardian of an insane person must look to the same source for guidance.

Section 48, Chapter 1, Article 1, Revised Statutes Missouri 1929, pertaining to administrators, reads as follows:

"If any executor or administrator die, resign or his letters be revoked, he or his legal representatives shall account for, pay and deliver to his successor, or to the surviving or remaining executor or administrator all money, real and personal property of every kind, and all rights, credits, deeds, evidences of debt and such papers of every kind of the deceased, at such time and in such manner as the court shall order, on final settlement with such administrator or executor or his legal representatives, to be made on motion of his successor, or remaining or surviving executor or administrator."

In the case of State ex rel. Mann v. Reynolds et al., 62 S. W. (2d) 483, this court discussed at length the several sections pertaining to the procedure in cases of the death, resignation or removal of an executor or administrator, and after an exhaustive review of these sections held that no notice is required under the provisions of Section 48. [Emmons v. Gordon, 125 Mo. 636, 28 S. W. 863.]

It therefore follows that no notice of final settlement with the successor guardian was required to be given by Rebecca Young, administratrix. It is true that no motion of the successor guardian or order of probate court was made directing the time or the manner that she should account for, pay and deliver to her successor all money, real and personal property of every kind, and all rights, credits, deeds, evidences of debt and such papers of every

kind of the deceased, on final settlement with the successor guardian, but said administratrix did so voluntarily and complied substantially, if not literally, with said Section 48. We cannot justify ourselves in holding the administratrix responsible for the failure of the successor guardian or the probate judge to make such motion and order. She did without such motion or order what the statute contemplates and directs that she do, and her settlement with the successor guardian was just as effectual and final as if said motion and order had been made. Mr. Lucy, the successor guardian had actual knowledge of all she did; (see paragraphs 7 to 15 inclusive of agreed statement of facts) he received from her final settlement of the account of John W. Young, deceased, as guardian and curator of the estate of James P. Bearden, and executed the following receipts:

"Received of Mrs. Rebecca Young, administratrix of the estate of John W. Young, deceased, the following papers pertaining to the James P. Bearden estate of which the said John W. Young was the guardian and curator, said papers being delivered to O. C. Lucy for the purpose of transmitting the same to Ray J. Cunningham, chief attorney Veterans Administration, Jefferson Barracks, for his approval:

"1. Two copies guardian's final settlement.

"2. Vouchers numbered from 1 to 44, inclusive, totaling $1285.05, and representing legitimate expenditures by guardian.

"3. Bank statement of Guardian's account as of July 23, 1935, showing a balance of $1019.72.

"4. Two documents showing that certain fees have been assigned to the estate of James P. Bearden.

"5. Check from Rebecca Young, administratrix of the estate of John W. Young, representing the amount of money belonging to the James P. Bearden estate that was not deposited at the date of death of John W. Young, $226.64.

"Received by me this 15th day of August, 1935.

"(Signed) O. C. Lucy.

"Witnesses:

"(Signed) Roy W. McGhee."

"I, O. C. Lucy, Guardian and Curator of James P. Bearden, hereby acknowledge receipt of the deeds of trust and notes listed in the final settlement above referred to and also the five $1000 bonds listed as part of the assets of the James P. Bearden estate.

"Dated this . . . day of August, 1935.

"(Signed) O. C. Lucy,
"Guardian and Curator of' James P.
"Bearden Estate."

The Probate Court accepted and approved her final settlement with

Mr. Lucy, the successor guardian, with full knowledge of the sucessor guardian, no objections or exceptions were made, nor appeal taken therefrom. We think this constituted a valid final settlement of Rebecca Young, administratrix, and has the force and effect of a final judgment. [State ex rel. Richardson v. Allen, 224 S. W. 11; State ex rel. Pountain v. Gray, 106 Mo. 526, 17 S. W. 500; Emmons v. Gordon, *supra*; State ex rel. Mann v. Reynolds, et al., *supra*.]

The case of State ex rel. Knisely v. Holtcamp, *supra*, cited by respondent, is not in point. It had to do with the question of notice of final settlement of an executor or administrator when the estate had been fully administered. In such cases notice of final settlement is specifically required by statute. Not so where a final settlement is made by the legal representative of a deceased guardian or administrator with his successor. [Emmons v. Gordon, *supra*.] The settlement of the legal representative of a deceased guardian or of a guardian or administrator who has resigned or been discharged, made with his successor in office has the same conclusiveness and finality as other final settlements. [State ex rel. Richardson v. Allen, *supra*.]

It is further contended by respondent that assuming that the settlement made by Mrs. Young, the administratrix, and approved by the Probate Court, is final, binding and conclusive, it is not final and conclusive as to the annual settlements; and in support thereof cite the cases of Nelson v. Barnett, 27 S. W. 520, and Townsend v. Townsend, 60 Mo. 246. The Nelson case does not support respondent's contention but does sustain our holding herein. The court said:

"The final settlement of an administrator stands as firmly on an impregnable basis of conclusiveness as does the judgment of any other court, and cannot be impeached except on the ground of fraud in the very act of procuring the judgment, or, as it is sometimes expressed, in the 'concoction' of the judgment. [McClanahan v. West, 100 Mo., loc. cit. 320, 13 S. W. 674, and cases cited; Nichols v. Stevens, 25 S. W. 578.]"

It is true the court held in this case that a judgment of a Probate Court on a final settlement of an administrator is, of course, conclusive only as to matters therein embraced. It says:

"In order that any matter can be said to have passed *in rem judicatam*, it must have been tried and adjudicated by the court. [2 Woerner, Adm., Article 506, and cases cited.] And it has been determined in this State that parol evidence may be introduced to show that certain matters, as to which the record is silent, were not passed on in a judgment of allowance in a probate court."

We are in entire accord with this holding. It does not hold that annual settlements can be attacked after final settlement, but we think to the contrary. Certainly matters involved in an annual settle-

ment after approval of a final settlement, have been passed on in a judgment of allowance in a Probate Court. The court says further:

"In this case it seems there are matters which were not embraced in the final .settlement. If this is true, then, of course, the matters thus nonincluded, not having been tried and adjudicated, are still open for trial and adjudication, and as to them the final settlement constitutes no adjudicatory barrier."

Had these matters been in an annual settlement, they would in effect have been embraced in the final settlement, and therefore, there would have been an adjudicatory barrier. We think there is no doubt that the court in this case when speaking of the matters embraced in the final settlement included not only items that were specifically set out therein, but items in previous annual settlements that were merged therein. The items under consideration when the opinion was written were items that had never been reported, and were not included in any of the annual settlements or the final settlement. The court further states:

". . . if it be clearly made to appear that certain items, to-wit, the proceeds arising from the sale of the stock on hand, were not reported to the probate court, and did not enter into the final settlement of the administratrix, the right of action of plaintiff is not yet barred, . . ."

But had the items complained of been reported to the court, and had they been included in an annual settlement, they would have been barred since annual settlements merge into and become a part of the final settlement although not specifically incorporated therein. In a very early case, Picot v. Biddle's Administrator, 35 Mo. 29, 1. c. 42, speaking directly on this question, the court said:

"A final settlement has been made, and as the annual settlements necessarily became merged in the final settlement, there could be no remedy but by bill in chancery to surcharge and falsify."

The Townsend case, *supra*, relied upon by respondents, was a suit brought to set aside final settlement on the ground that it was fraudulently procured. The proposition before us was not raised or discussed in that case. We see no analogy between that case and the case at bar.

The approval of final settlement of the legal representative of a deceased guardian or administrator by the Probate Court is an approval of all preceding settlements. To hold otherwise would lead to a multiplicity of suits, destroy finality of all orders of the Probate Court approving final settlements of estates, and would clothe such proceedings with a veil of uncertainty and insecurity. It was obviously the intention of the Legislature when the statutes relative to administration of estates were enacted to vest a final settlemen, when approved by the court, with the full force and effect of a final judgment; not

only of the things specifically incorporated therein, but of the things incorporated in the annual or semi-annual settlements that led up to such final settlement. To hold that annual settlements may be collaterally attacked after final settlement would undermine and destroy the very purpose for which final settlements are made. Until such final settlement is set aside by a proper proceeding, the annual settlements are not open to examination or correction. [State ex rel. Public Admr. v. Lankford, 55 Mo. 564; State ex rel. v. Jones, 14 Mo. App. 595; Sheetz & Sheetz v. Kirtley, 62 Mo. 417.]

Therefore, the final settlement made by Rebecca Young, administratrix and approved by the Probate Court was valid, binding, final and conclusive, and is not subject to collateral attack; and the same is true of the prior annual settlements made by the deceased guardian, John W. Young. What we have said of the final settlement of Mrs. Young, except as to notice, is equally true of the final settlement of the successor guardian, Mr. Lucy, which was approved on the 3rd day of December, 1935, by the court; there being no objections or exceptions made thereto or appeal taken therefrom. It necessarily follows that respondent cannot maintain this action, and in view of this holding, it is unnecessary to pass upon other issues raised.

The finding of the trial court is accordingly reversed and the cause remanded with directions that judgment be entered for appellant. *Allen, P. J.,* and *Smith, J.,* concur.